Argued and submitted December 23, 1996, reversed and remanded July 16, 1997, petition for review denied January 27, 1998 (326 Or 389)

Terry PILGRIM,
*Appellant,*

*v.*

CLATSKANIE PEOPLE'S UTILITY DISTRICT,
*Respondent.*

(94-2121; CA A90883)

942 P2d 821

Donald D. Dartt argued the cause and filed the brief for appellant.

Kenneth Eaton Bemis argued the cause for respondent. With him on the brief were Alan M. Lee and Bullard, Korshoj, Smith & Jernstedt.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Riggs, P. J., dissenting.

## LANDAU, J.

Plaintiff appeals a summary judgment entered in favor of defendant in this action for failure to reinstate employment following a compensable work injury. We reverse and remand.

The facts are not in dispute. In 1993, plaintiff was employed by defendant as a lineman. On March 29 of that year, plaintiff injured his knee on the job. He did not work for approximately nine months while recovering from knee surgery. Plaintiff was released by his attending physician to modified work with instructions to do limited lifting, squatting, kneeling and the like. In May 1994, defendant's workers' compensation carrier obtained a second opinion confirming that plaintiff probably could not return to work as a lineman. Defendant had no other available and suitable positions for plaintiff. On May 18, 1994, defendant terminated plaintiff. The following week, plaintiff's attending physician changed his opinion about plaintiff's medical status, concluding that plaintiff should be returned to his previous position without restrictions. Defendant sought an independent opinion from a third physician and, on the basis of that opinion, adhered to its termination decision.

Plaintiff initiated this action for reinstatement under ORS 659.415(1), which provides, in part:

> "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."

Defendant answered, denying that the statute afforded plaintiff a basis for relief.

Defendant moved for summary judgment, arguing that it is not subject to the reinstatement statute by virtue of ORS 659.415(3)(b)(D), which provides, in relevant part:

> "(3)   Notwithstanding subsection (1) of this section:
>
> "* * * * *

"(b) The right to reinstatement under this section does not apply to:

"* * * * *

"(D) A worker whose employer employs 20 or fewer workers at the time of the worker's injury and at the time of the worker's demand for reinstatement."

In support of the motion defendant offered evidence that, at the time of plaintiff's injury and at the time of his request for reinstatement, it employed 20 and 19 people, respectively, not counting its publicly elected board of five directors. According to defendant, because it employed no more than 20 workers, the reinstatement statute does not apply. Plaintiff opposed the motion on the ground that the five members of the board also count as workers; therefore, because defendant employed at least 24 workers at the relevant times, the reinstatement statute does apply. In support of his contentions, plaintiff relied on the administrative rule promulgated by the Bureau of Labor and Industries defining the statutory term "worker" for the purpose of implementing ORS 659.415:

"'Worker' means any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of any employer *and includes salaried, elected and appointed officials* of the state, state agencies, counties, cities, school districts and other public corporations * * *."

OAR 839-06-105(4)(a) (1996) (emphasis supplied). According to plaintiff, because the rule expressly defines the statutory term "worker" to include elected officials, the five board members must be added to the employee total. Defendant replied that, because the rule defines "worker" to mean one who works "subject to the direction and control" of an employer, the five board members do not count because they are not subject to the control of any employer. The trial court granted defendant's motion.

On appeal, plaintiff offers a single, brief argument:

"The definition of 'worker' [in the administrative rule] specifically includes elected officials of public agencies and corporations. Defendant is a public utility district. Its Board of Directors is comprised of five elected officials. As

such, defendant's Board members are 'workers' under OAR 839-06-105, and as that term is used in determining reinstatement rights under ORS 659.415. Consequently, defendant did not have '20 or fewer workers' at the time of plaintiff's compensable injury, nor at the time of the reinstatement request."

Defendant's argument similarly is narrowly focused:

"Even though the definition [in OAR 839-06-105] specifically includes salaried, elected and appointed public officials as potential workers, this reference is not mutually exclusive and such individuals still must be subject to the direction and control of an employer to be 'workers' of that employer under the law."

Thus, we observe at the outset the narrow focus of the issue before us. It is limited to whether the definition of "worker" in OAR 839-06-105(4)(a) includes "elected officials," regardless of whether they are supervised by an employer. The parties do not argue—and we have no proper occasion to address—other potential issues such as whether the rule applies only to salaried officials, whether defendant's board members actually are salaried within the meaning of the rule or whether defendant is a public corporation within the meaning of the rule.

In addressing the limited issue before us, we attempt to ascertain, if possible, the meaning of the rule that the promulgating agency intended. *Perlenfein and Perlenfein*, 316 Or 16, 20, 848 P2d 604 (1993). In so doing, we apply the same interpretive principles that apply to the construction of statutes. *See Dept. of Land Conservation v. Lincoln County*, 144 Or App 9, 14-15, 925 P2d 135 (1996), *rev den* 324 Or 560 (1997). That means that we first examine the text in its context, and, if that inquiry does not reveal the intended meaning of the rule, we examine extrinsic evidence and relevant rules of construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

In this case, the rule defines "worker" both in terms of what the word *means* and what it *includes*. As we noted in *State v. Haynes*, 149 Or App 73, 76-77, 942 P2d 295 (1997), it is fairly common for the law to specify what a word definitely includes and then provide a more general definition of what

the word means apart from those things specifically enumerated. The statute at issue in that case illustrates the point. ORS 164.325 defines first-degree arson to mean intentionally setting afire "protected property," defined by ORS 164.305(2) to mean "any structure, place or thing customarily occupied by people," and defined to specifically include churches and forestland, without regard to whether they are customarily occupied. *Id.* at 78. We held that proof that a church was customarily occupied at the time it was burned down was not required under the statute.

The same interpretive problem is posed in this case. OAR 839-06-105(4)(a) provides that "worker" means, among other things, a person who works "subject to the direction and control of any employer." The rule does not stop there, however. It also provides that "worker" specifically includes "salaried, elected and appointed officials." The rule does not say that salaried, elected and appointed officials are workers only to the extent that they work subject to the direction and control of an employer. That only makes sense, at least so far as elected officials are concerned, given that elected officials are not subject to the direction and control of an employer. Indeed, to read the rule as defendant suggests would require us not only to read language into the rule that the promulgating agency—for whatever reason—chose not to include, but also to make the language that it did include entirely superfluous. Both consequences are inconsistent with basic principles of construction. ORS 174.010.

Examination of the broader context in which the rule was adopted confirms what the language of the rule itself strongly suggests. OAR 839-06-105(4)(a) defines the term "worker" for the purpose of implementing ORS 659.415, which applies to workers who have not been reinstated after sustaining compensable injuries under the terms of the Workers' Compensation Law. *See generally Shaw v. Doyle Milling Co.*, 297 Or 251, 255, 683 P2d 82 (1984) (describing purpose of ORS 659.415 "to guarantee that an employer shall not discriminate against a disabled worker for exercising the worker's rights under the Workers' Compensation Law"). The Workers' Compensation Law defines "worker" in terms identical to the BOLI administrative rule's definition of the same word:

> " 'Worker' means any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer and includes salaried, elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations * * *."

ORS 656.005(30). That definition, in relevant part, was enacted to address precisely whether elected officials who are not subject to direction and control of an employer are "workers" for the purposes of determining workers' compensation coverage.

■ An earlier version of the statute defined "workman" in the following terms:

> "[A]ny person who engages to furnish his services, subject to the direction and control of an employer * * *."

ORS 656.002(15) (1957). The Attorney General concluded that the law did not apply to elected county officials—specifically, clerks, judges, treasurers and commissioners—because, among other things, they were "not subject to the direction and control of the county, but only to the law." 24 Op Atty Gen 20, 21 (1948). In 1959, the State Accident Insurance Commission proposed an amendment to the statute, specifically to include elected officials. Minutes, Senate Labor and Industries Committee, April 24, 1959, pp 1-2. Thus, the language "and includes salaried elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations" was added to the statute.[1] *See* ORS 656.002(16) (1959). In the context of the

---

[1] In its original form, the added phrase contained no comma between the words "salaried" and "elected." In 1973, a comma appeared when the legislature enacted other, unrelated amendments to the statute. Or Laws 1973, ch 620, § 1. We express no opinion on the effect, if any, of the appearance of the new punctuation, as it does not bear on the narrow issue properly before us.

The dissent takes us to task for failing to speculate on the effect, if any, of the correct punctuation of the statute. According to the dissent, the errant comma must be ignored, and the statute must be read to apply only to elected officials who are salaried. On that basis, the dissent contends, we should affirm the trial court's decision to grant summary judgment in favor of defendants. In so arguing, the dissent concedes that the parties failed to raise that issue. It nevertheless insists that we *must* decide it, because to do otherwise results in "an advisory opinion" that gives an "incomplete" picture of the statute. 149 Or App at 242. We remain unpersuaded.

Attorney General's opinion, the legislature's intentions cannot be mistaken.

■    We conclude that elected officials of the state, state agencies, counties, cities, school districts and other public corporations may be "workers" within the meaning of OAR 839-06-105(4)(a), even though they are not subject to the direction and control of a supervisor. The trial court therefore erred in allowing defendant's summary judgment motion. We emphasize the limited nature of our holding, in particular, that we do not hold that the elected officials in this case are, in fact, workers within the meaning of the rule. That determination depends on proof as to other factors enumerated in the rule, matters that, as we have noted, the parties do not argue in this appeal and may or may not choose to address on remand.

Reversed and remanded.

**RIGGS, P. J.,** dissenting.

I agree with much of what the majority has said in its partial resolution of this appeal. Through a slightly different analysis, I too conclude that elected officials "may" be workers under OAR 839-06-105(4)(a). Because the right to reinstatement provided by ORS 659.415 applies only to a worker who has sustained a compensable injury under the

---

The issue before us is whether the trial court erred in granting summary judgment, not describing what the statute means in the abstract. Simply because we are required to construe one aspect of a statute in disposing of an assignment of error does not mean that, because we happen to be in the statutory neighborhood, we must express our opinion as to other matters not argued by the parties. *That* would be to render an advisory opinion. *See, e.g., State ex rel Kane v. Goldschmidt,* 308 Or 573, 590, 783 P2d 988 (1989) ("If we attempted to anticipate and resolve all the variations possible under the statute at this time, we would stray into giving an advisory opinion."); *see also SAIF v. Mize,* 129 Or App 636, 640, 879 P2d 907 (1994); *Clark v. Schumacher,* 103 Or App 1, 7, 795 P2d 1093 (1990).

Even if the dissent were correct that we should address the significance of the inadvertently included comma, *see* 149 Or App at 243-44, and even if the dissent were correct as to the actual significance of the punctuation of the statute, the fact remains that the parties have not argued whether the elected officials in this case—who are paid a small stipend plus expenses—are "salaried." The dissent simply *assumes* the very matter at issue; indeed, nowhere in the dissenting opinion is there even a discussion of whether the officials in this case are salaried. That is precisely the sort of issue that the parties should be allowed to argue and the trial court should be allowed to decide. No one is well served by our rushing in where the parties have failed to tread.

terms of the Workers' Compensation Law, ORS chapter 656, I too conclude that the statutory definition, the cases interpreting it, and its legislative history provide context for the BOLI administrative rule. Ultimately, I too conclude that the legislative history shows that in 1959 the legislature amended ORS 656.005(30), then numbered ORS 656.002(16), for the purpose of including elected officials, who would otherwise be excluded because they are not subject to the direction and control of an employer. Or Laws 1959, ch 448, § 1. Further, I would hold, as the majority implicitly does, that BOLI's intention in adopting the administrative rule was to adopt the statutory definition of worker.

As far as it goes, the majority is correct. However, the majority's opinion stops short of answering the only question that the parties seek to have resolved on appeal: whether the elected members of defendant's board of directors are workers. That is a legal question, and one that is put squarely to us. The parties ask us to decide whether *these* elected officials *in this case* are workers. The majority's chosen route is nothing more than an advisory opinion: The board members *can* be workers under the statute, but they *may* not be, depending on other potential questions of interpretation of the statute that the parties have not precisely raised.

The majority appears to be concerned with the parties' failure to argue the question of the effect of the word "salaried," as used in the rule and the statute. As the majority says in a footnote, in its original form, the statute did not contain a comma between the words "salaried" and "elected." The comma appeared in 1973, when the legislature enacted other, unrelated amendments to the statute. Or Laws 1973, ch 620, § 1. The majority is unwilling to address the effect of that change here, however, because the parties have so "narrowly focused" the issue. It is true that the parties have not expressly asked that the effect of the word "salaried" be considered, undoubtedly because they were not aware of the possibility that it could have any effect, having not discovered that in its 1959 form the statute contained no comma between the words "salaried" and "elected." However, *our* discovery of the change obligates us to complete the statutory inquiry that the parties have initiated. Our responsibility to interpret the statute correctly and completely according to

the legislature's intent does not begin where *the parties* have framed the question for us or end at the point where the parties' analysis is no longer helpful. We have an independent obligation to interpret the statutes fully and completely. As the Supreme Court said in *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), efficient procedures requiring that issues be raised on appeal are instruments for, not obstacles to, deciding the merits of an appeal. When a question of statutory interpretation is involved, we may not let the parties' briefing of the issue restrict our ability to give a correct *and complete* interpretation. *PacifiCorp v. City of Ashland*, 89 Or App 366, 370, 749 P2d 1189, *rev den* 305 Or 594 (1988).

As it was amended in 1959, ORS 656.002(16) included "salaried elected and appointed officials." Or Laws 1959, ch 448, § 1. As I have noted, there was no comma between "salaried" and "elected." Thus, as it then read, the word "salaried" modified "elected" and "appointed." Only *salaried* elected officials were included as workers. That was consistent with another amendment to ORS 656.002 made in 1959 that required that persons work for "remuneration." Or Laws 1959, ch 448, § 1.

The comma between "salaried" and "elected" first appeared in 1973. In that session, the legislature amended ORS 656.002 twice. In Oregon Laws 1973, chapter 497, section 3, the legislature first amended the statute to add a new subsection (2) defining "average weekly wage," and it renumbered the remaining subsections. In did not touch the definition of the term "workman," then contained in subsection (21), and renumbered to subsection (22). In Oregon Laws 1973, chapter 620, section 1, the legislature again amended ORS 656.002, by adding two subparagraphs to subsection (7), which defined "compensable injury." It did not make any amendment to subsection (22). However, as enacted and later codified, a comma appeared in the bill between "salaried" and "elected," not as an amendment or as part of other amendments. The comma is significant: With its insertion, the meaning of the statute is changed, at least grammatically. "Salaried" no longer modifies "elected" or "appointed," but simply becomes its own category of "official," as the first in a series of three types of officials who are considered to be workers. It is difficult to conceive of a rationale for such a

change. There is no testimony with regard to the insertion of the comma and no indication that it was added pursuant to legislative action. In the absence of legislative history, it is unlikely that the comma was inserted deliberately for the purpose of creating a separate category of "salaried official," or to eliminate the requirement that "elected" and "appointed" officials be salaried. For that reason, I conclude that the insertion of the comma was a clerical error.

The statute has been amended many times over the years, and the comma remains. We are mindful of the view that, having withstood the test of time without being changed, the comma should be regarded as expressing the legislature's intent, no matter what the cause of its insertion. *See Coston v. Portland Trust Co. et al.*, 131 Or 71, 282 P2d 442 (1929). However, in the light of the patent nature of the clerical error that resulted in its insertion, I would conclude that the comma must be disregarded. As the Supreme Court said in *State v. Lermeny*, 213 Or 574, 580, 326 P2d 768 (1958), when a clerical error defeats the purpose of an act, the court will correct the error to conform to the intended meaning of the legislation. *See Bush v. Greyhound Lines, Inc.*, 295 Or 619, 669 P2d 324 (1983); *see also Zidell Marine Corp v. West Painting, Inc.*, 133 Or App 726, 894 P2d 481, *aff'd* 322 Or 347, 906 P2d 809 (1995). Specifically, punctuation, although a proper guide to interpretation, will be disregarded if it defeats a clear legislative intent. *Fleishauer v. Bilstad*, 233 Or 578, 379 P2d 880 (1963).

In my view, there is nothing in the Supreme Court's statutory construction template, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), that makes binding on the court's interpretation of a statute an obvious clerical error that changes the meaning of the statute so as to defeat the legislative purpose. As it was originally enacted in 1959, only *salaried* elected officials were considered to be workers under ORS 656.002. Nothing in the legislative history shows that the legislature intended the results of the clerical error inserting the comma. We should, accordingly, disregard the comma between "salaried" and "elected," and hold that only salaried elected officials are to be treated as workers under the Workers' Compensation Act and for

purposes of the right to reinstatement under ORS chapter 659.

As the majority says, the issue before us is whether the trial court erred in granting summary judgment to defendant. Because the record on summary judgment shows conclusively that the members of defendant's elected Board of Directors are not "salaried," I would affirm the trial court's granting of summary judgment for defendant. Although the trial court did not expressly consider the question of the effect of the comma or the significance of the word "salaried," it correctly granted summary judgment to defendant, and we should affirm that ruling for the reasons explained in this dissent, despite the fact that the parties and the trial court focused on a different question. *See, e.g., Bevan v. Garrett,* 284 Or 293, 586 P2d 1119 (1978); *Baumann v. Wright,* 249 Or 212, 437 P2d 488 (1968); *Capital Investments v. Lofgren,* 81 Or App 93, 97, 724 P2d 862 (1986). Because the majority reverses a correct decision of the trial court and sends the case back for the resolution of issues that are ours to decide, I dissent.